UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY J. BELLMAN,

                Petitioner,

v.                                  CASE NO. 07-12507
                                  HONORABLE NANCY G. EDMUNDS

CARMEN PALMER,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner Randy J. Bellman has filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for murder, home invasion, and possession of a firearm during the commission of a felony (felony firearm). The Court has concluded from a review of the pleadings and record that Petitioner is not entitled to habeas relief. Therefore, his petition will be denied.

## I. Background

### A. The Charges, Trial, and Direct Appeals

Petitioner was charged in Macomb County, Michigan with open (first- or second-degree) murder, first-degree home invasion, and two counts of felony firearm. The charges arose from evidence that,

> [o]n March 7, 1999, at approximately 2:00 AM, defendant drove from his home to the apartment of William Neal. It took approximately 40 minutes for defendant to complete his trip; he carried with him a loaded shotgun. Defendant forcibly entered Mr. Neal's apartment and proceeded into the bedroom where he confronted Mr. Neal and defendant's estranged wife, Christine Bellman. Ms. Bellman testified she and the victim calmed defendant; he then turned his back on the couple and left the room. The

victim, however, followed defendant out of the room, putting his hand on defendant's shoulder.  According to Ms. Bellman, she was not able to see what occurred after the two men left the bedroom.  Ms. Bellman testified that, within seconds, she heard a gun shot; Mr. Neal fell back into the doorway of the bedroom.  Defendant proceeded to unload his weapon, and waited for the police to arrive.

*People v. Bellman*, No. 2000-440-FC, at unnumbered page 2 (Macomb County Cir. Ct. Oct. 12, 2000) (unpublished).  The prosecutor's theory was that Petitioner was angry with his wife because she had left him and was divorcing him.  The prosecutor maintained that Petitioner focused his anger on William Neal and premeditated the murder.

Petitioner did not testify or present any witnesses.  His defense was that he did not intend to injure or kill anyone and that he was merely attempting to frighten Mr. Neal and reclaim his wife and family.  He maintained through counsel that the shooting was an accidental, careless, and reckless act.

The trial court instructed the jury on voluntary manslaughter, involuntary manslaughter, and negligent use of a firearm as lesser-included offenses of open murder. The court instructed the jury on the offense entry without the owner's permission as a lesser-included offense for first-degree home invasion.  On May 18, 2000, a Macomb County Circuit Court jury found Petitioner guilty of first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a), first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and two counts of felony firearm, Mich. Comp. Laws § 750.227b.

The trial court subsequently granted Petitioner's motion for a directed verdict of acquittal on the first-degree murder count and found Petitioner guilty of second-degree murder. The trial court then sentenced Petitioner to concurrent terms of two years in prison for each of the felony firearm convictions, followed by concurrent terms of 180 to 270

2

months (15 to 22-1/2 years) in prison for the murder conviction and 95 to 240 months (7

years, 11 months to 20 years)  for the home invasion.

Both Petitioner and the prosecutor appealed as of right.  The prosecutor challenged

the trial court's directed verdict on the first-degree murder charge, and Petitioner claimed

that the prosecutor shifted the burden of proof, that there was insufficient evidence to

support his conviction for second-degree murder, and that trial counsel was ineffective for

failing to investigate and raise an insanity defense.  The Michigan Court of Appeals

reversed the trial court's directed verdict of acquittal, affirmed Petitioner's convictions in

all other respects, and remanded the case for reinstatement of the first-degree murder

conviction.  *See People v. Bellman*, Nos. 231607 and 233954 (Mich. Ct. App. Aug. 30,

2002).  On April 29, 2003, the Michigan Supreme Court denied leave to appeal.  *See*

*People v. Bellman*, 661 N.W.2d 238 (Mich. 2003) (table).

On remand, the trial court reinstated Petitioner's first-degree murder conviction and

sentenced Petitioner to mandatory life imprisonment for the crime.  Petitioner appealed his

life sentence on the ground that he was denied his right to meaningful allocution due to his

incompetence.  The Michigan Court of Appeals affirmed his sentence, *see People v.*

*Bellman*, No.250930 (Mich. Ct. App. Mar. 15, 2005), and on October 31, 2005, the

Michigan Supreme Court denied leave to appeal.  *See People v. Bellman*, 705 N.W.2d 116

(Mich. 2005) (table).

### B.  The First Habeas Petition and State Collateral Review

Meanwhile, in 2004, Petitioner filed a federal habeas corpus petition.  This Court

dismissed the petition without prejudice so that Petitioner could pursue additional remedies

in state court.  *See Bellman v. Romanowski*, No. 04-cv-71582 (E.D. Mich. Apr. 25, 2005).

3

Petitioner then filed a motion for relief from judgment, alleging that (1) he was actually innocent of first-degree murder, (2) his trial and appellate attorneys were ineffective for failing to raise the defense of guilty, but mentally ill, (3) his trial attorney refused to allow him to plead guilty, and (4) the prosecution failed to prove each and every element of first-degree murder.   The trial court denied Petitioner's motion on the ground that he failed to establish "good cause" under Michigan Court Rule 6.508(D)(3) for failing to raise his issues on appeal and "actual prejudice."  The Michigan Court of Appeals denied leave to appeal the trial court's decision for failure to establish entitlement to relief under Rule 6.508(D). *See People v. Bellman*, No. 270038 (Mich. Ct. App. Dec. 27, 2006).  On May 30, 2007, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Bellman*, 731 N.W.2d 702 (Mich. 2007) (table).

### C.  The Pending Habeas Petition and Responsive Pleading

On June 12, 2007, Petitioner returned to federal court and filed the pending habeas corpus petition.  He alleges that: (1) there was insufficient evidence to support his first-degree murder conviction;  (2) the prosecutor shifted the burden of proof during closing arguments, and defense counsel was ineffective for failing to object to the prosecutor's argument; (3) there was insufficient evidence to support his second-degree murder conviction; (4) trial counsel was ineffective for failing to investigate and raise an insanity defense; (5) he was denied the right to meaningful allocution due to his incompetence; (6) he is actually innocent of first-degree murder; (7) his trial and appellate attorneys deprived him of a meaningful defense and meaningful appellate review by their failure to raise the defense of guilty, but mentally ill; (8) trial counsel committed a serious mistake by advising him to proceed with a jury trial and refusing to allow him to plead guilty; and (9) the

4

prosecutor failed to prove each and every element of first-degree murder.

Respondent argues in an answer to the habeas petition that Petitioner's claims lack merit or are not cognizable on habeas review and that claim 2, as well as claims 5 through 9, are procedurally defaulted. The Court agrees that claims 7 and 8 are procedurally defaulted. However, because it is more efficient to address the substantive merits of Petitioner's other claims than to perform a procedural-default analysis on those claims, the Court will excuse the alleged procedural defaults pertaining to claims 2, 5, 6, and 9. A federal habeas court need not address a procedural-default issue before deciding against the petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), *cert. denied*, __ U.S. __, 129 S. Ct. 1986 (2009).

## II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

5

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

## III. Discussion

### A. The Sufficiency of the Evidence

The first and ninth habeas claims challenge the sufficiency of the evidence supporting Petitioner's first-degree murder conviction, and the third claim alleges that there was insufficient evidence of second-degree murder. Petitioner's conviction for second-degree murder was vacated by the Michigan Court of Appeals. Therefore, his challenge to that conviction is moot. He stands convicted of first-degree murder.

The only question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of [first-degree murder] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana,* 406 U.S. 356, 362 (1972) (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "[T]he Jackson inquiry does not focus on whether the trier

6

of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

Courts must apply the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. In Michigan, the elements of first-degree, premeditated murder are: (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 656 N.W.2d 835, 841 (Mich. Ct. App. 2002) (quoting Mich. Comp. Laws § 750.316(1)(a)). Premeditation may be established through evidence of: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992).

In this case there was evidence that Petitioner may have traveled for forty minutes from his home to reach Mr. Neal's apartment. He was armed with a shotgun. He broke into Mr. Neal's apartment building and forced his way into Mr. Neal's apartment. Once inside, he confronted Mr. Neal, who was unarmed, and pushed Neal backwards into the bedroom. He subsequently appeared to calm down and walked out of the bedroom, followed by Mr. Neal. His estranged wife, Christine Bellman, heard a gunshot seconds later. A rational juror could have concluded from this evidence, taken in the light most favorable to the prosecution, that Petitioner shot and killed Mr. Neal and that the killing was premeditated and deliberate.

Petitioner maintained that the shooting was accidental and that he did not intend to harm anyone. However, the pathologist saw no evidence of close-range shooting, and he

7

opined that Mr. Neal was turning as he was shot.  Furthermore, the jury was entitled to infer

from evidence of marital discord between Petitioner and Christine Bellman that Petitioner

premeditated and deliberated the murder.  *People v. Ungar*, 749 N.W.2d 272, 290 (Mich.

Ct. App. 2008) (citing *People v. Fisher*, 537 N.W.2d 577 (Mich. 1995)).

Even if the Court were to conclude that Petitioner's convictions were not supported

by sufficient evidence, "the question would remain whether the [Michigan] Court of Appeals

was unreasonable in concluding otherwise."  *Saxton v. Sheets,* 547 F.3d 597, 607 (6th Cir.

2008).   Given the strength of the evidence against Petitioner and the deference owed to

the jury's resolution of conflicting inferences, the state appellate court's conclusion – that

the evidence was sufficient to support Petitioner's first-degree murder conviction – was

objectively reasonable and neither contrary to, nor an unreasonable application of,

*Jackson*.

## B.  The Prosecutor

The second habeas claim alleges that the prosecutor improperly shifted the burden

of proof during his rebuttal argument and that defense counsel was ineffective for failing

to object to the argument.  The Michigan Court of Appeals reviewed this claim for "plain

error" because Petitioner did not object to the prosecutor's argument during trial.  The Court

of Appeals went on to conclude that the prosecutor's rebuttal argument was not improper

and that trial counsel was not ineffective for failing to advocate a meritless position.

### 1.  Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  To prevail on his claim, Petitioner

must demonstrate that the prosecutor's conduct deprived him of a specific constitutional

8

right or infected his trial with such unfairness as to make the resulting conviction a denial

of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The misconduct

must have been "'so egregious as to render the entire trial fundamentally unfair.'" *Pritchett*

*v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117,

119 (6th Cir. 1979)).

The inquiry into prosecutorial-misconduct claims is two-fold. *Slagle v. Bagley,* 457

F.3d 501, 515 (6th Cir. 2006), *cert. denied*, 551 U.S. 1134 (2007). First, courts must ask

whether the prosecutor's conduct or remarks were improper. *Id.* at 516. Second, if the

conduct or remarks were improper, a reviewing court must consider whether the

impropriety was so flagrant as to warrant reversal. *Id.* When evaluating flagrancy, courts

must consider "(1) whether the remarks tended to mislead the jury or to prejudice the

accused; (2) whether they were isolated or extensive; (3) whether they were deliberately

or accidentally placed before the jury; and (4) the strength of the evidence against the

accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

### 2. Application

Petitioner takes issue with the following remarks, which the prosecutor made during

his rebuttal argument:

> This was not a marriage that they work through their problems. The
> only testimony about this marriage that you heard was from Mrs. Bellman.
> She was the one, as I said before, that was infinately [sic] involved with and
> she said it wasn't good, it had gotten to the point that she was afraid; that
> back in November his behavior started to go bad.
>
> . . . .
>
> You know, we can call this a tragedy, we can say they are longtime
> lovers, 19 years old, pregnant at 15 years old. Mr. Scharg makes it seem
> this is a marriage made in heaven and it was all sweetness in life, but the

9

only person who testified to that was Mrs. Bellman who said it wasn't so, it wasn't so.  Show me the evidence, discuss the evidence that this was a good marriage, that this relationship was good, that this was a couple that had been working through their problems.  Look at what she said because that's the only place where you heard evidence on this relationship, don't speculate.

(Tr. May 17, 2000, at 138-40.)   Petitioner claims that these remarks shifted the burden of proof to him to produce evidence that he and Christine Bellman had a good marriage and that he was innocent of the charges.

Prosecutors may not "suggest that the defendant had the burden of proof or any obligation to produce evidence to prove his innocence."  *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993).  They may, however, point out the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and the only comment that even remotely suggested that Petitioner had the burden of proof was the statement, "Show me the evidence."  Although the comment appears to have been deliberately made, it was an isolated remark, which the prosecutor later modified by encouraging the jurors to consider and discuss the evidence.

The remark could not have misled the jurors, because they were informed several times that the prosecutor carried the burden of proof.  Both the prosecutor and defense counsel explained to the jurors that the prosecutor carried the burden of proof.  (Tr.  May 17, 2000, at 113, 117-18, 140.)   The trial court, moreover, instructed the jurors that Petitioner was presumed innocent, that the prosecutor had to prove the elements of the offenses beyond a reasonable doubt, and that Petitioner did not have to testify, prove his innocence, or do anything.  (*Id.* at 154-55.)

Furthermore, the prosecutor was entitled to "wide latitude" in his rebuttal argument.

10

*Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (*en banc*) (citing *DeChristoforo*, 416 U.S. at 637).   The contested remarks were a fair response to defense counsel's argument that Christine Bellman was Petitioner's first and only love and that the two of them had worked through their problems for twenty-three years until Petitioner suspected Christine of having a relationship with Mr. Neal.  (Tr. May 17, 2000, at 121-26.)  The Court concludes that the prosecutor's remarks were not improper, and even if they were, the remarks were not so flagrant as to require reversal of Petitioner's conviction.

Because the prosecutor's conduct did not rise to the level of a constitutional error, defense counsel was not ineffective for failing to object to the argument.  "[T]rial counsel cannot have been ineffective for failing to raise a meritless objection." *Juan H. v. Allen,* 408 F.3d 1262, 1273 (9th Cir. 2005).

## C.  Ineffective Assistance of Counsel

Petitioner's fourth, seventh, and eighth claims allege ineffective assistance of counsel.  Petitioner states that his trial attorney was ineffective for failing to (1) investigate and raise an insanity defense, (2) assert that Petitioner was guilty, but mentally ill, and (3) recommend that Petitioner accept the prosecutor's plea offer.  Petitioner further alleges that his appellate attorney was ineffective for failing to raise the issue of guilty, but mentally ill, on appeal.

### 1.  *Strickland v. Washington*

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims.  *Williams*, 529 U.S. at 391.  Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient

11

performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  This standard applies to claims about trial and appellate counsel.  *Webb v. Mitchell*, __ F.3d __, __, No. 06-4606, 2009 WL 3644249, at *13  (6th Cir. Nov. 5, 2009) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

An attorney's performance is deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and if "counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The prejudice prong of *Strickland* requires Petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "Unless a defendant makes both showings [deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.

Judicial scrutiny of a defense attorney's conduct is "highly deferential – and doubly deferential when it is conducted through the lens of federal habeas."  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (*per curiam*).  A habeas petitioner must establish a violation of *Strickland's* two-pronged test and show that the state applied *Strickland* to the facts in an objectively unreasonable manner.  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

### 2.  Alleged Failure to Investigate an Insanity Defense

Petitioner alleges that his attorney was ineffective for failing to investigate and present a defense of not guilty by reason of insanity.  The Michigan Court of Appeals found no merit in this claim because, in its opinion, the defense was insubstantial and would not

12

have made a difference in the outcome of the trial.

"[I]n the context of asking whether counsel adequately investigated his client's defense, the ultimate inquiry is whether the choice not to conduct additional investigation was 'reasonable[ ] in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 691). The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, __ U.S. __, __, 129 S.Ct. 1411, 1420 (2009).

In Michigan, legal insanity is an affirmative defense "requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality of the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law.'" *People v. Shahideh*, 758 N.W.2d 536, 542 (Mich. 2008) (Taylor, C.J., concurring), *cert. denied*, __ U.S. __, 129 S. Ct. 2404 (2009). The record indicates that, after the shooting, Petitioner was referred to the Center for Forensic Psychiatry for an evaluation of competency to stand trial, criminal responsibility, and diminished capacity. In a report dated April 2, 1999, Petitioner was found incompetent to stand trial. At the time, mental health professionals found it impossible to determine culpability.

Following treatment, Petitioner was found competent to stand trial in a report dated June 23, 1999. He was referred to the Forensic Center a second time and examined for competency to stand trial, criminal responsibility, and diminished capacity. He was found competent on August 31, 1999, and in an updated report written on December 20, 1999. In the updated report, the Center for Forensic Psychiatry determined that there was no

13

evidence of legal insanity or diminished capacity when Petitioner shot the victim.  More specifically, the report stated that, although Petitioner may have suffered from a mild to moderate mood disorder, there was no evidence that he lacked substantial capacity to appreciate the wrongfulness of his conduct or that he was unable to conform his conduct to the requirements of the law.

The testimony at trial supports the Forensic Center's conclusion.  There was evidence that Petitioner may have driven his truck for forty minutes to reach the victim's residence.  There was additional evidence that he pried open the door to Mr. Neal's apartment building with a screwdriver and then kicked open the door to Mr. Neal's apartment.  After the shooting, his wife asked him if he was planning to shoot her, too.  He responded, "No."  Then, he smoked a cigarette and waited for the police to arrive.  This evidence suggests that Petitioner knew what he was doing and was able to conform his conduct to the requirements of the law.

Defense counsel likely made a strategic decision not to assert an insanity defense in light of the evidence against Petitioner and the psychiatric evaluations.  In the words of the state appellate court, defense counsel in all probability chose

> to emphasize the prosecution's burden to prove that defendant had the actual intent to kill, versus revealing to the jury (1) defendant's determination to communicate with his estranged wife, (2) defendant's manipulative threats of suicide, (3) defendant's substance abuse, and (4) defendant's awareness of the wrongfulness of his actions on the night of the instant offense in light of defendant's initial desire to leave the apartment before the police arrived.

*Bellman*, Mich. Ct. App. Nos. 231607 and 233954, at 5.  An insanity defense did not have a reasonable likelihood of success because, even though Petitioner has a history of psychiatric problems, he has not demonstrated that he lacked the capacity to appreciate

14

the wrongfulness of his conduct or that he was unable to conform his conduct to the requirements of law.  Therefore, defense counsel was not ineffective for failing to raise an insanity defense.

### 3.  Petitioner's Remaining Claims about Counsel

Petitioner's remaining claims about his attorneys (Claims 7 and 8) allege that (1) trial counsel refused to allow him to plead guilty to murder in return for a sentence of eleven years and (2) both his trial and appellate attorneys failed to raise the defense of guilty, but mentally ill.  Respondent asserts that these claims are procedurally defaulted.

### a.  Procedural Default

"When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review."  *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)).  "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim."  *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  All three elements of procedural default were satisfied in this case.

First, there is a state procedural rule applicable to Petitioner's claims.  Michigan

Court Rule 6.508(D)(3) prohibits state courts from granting relief from judgment if the defendant alleges nonjurisdictional grounds that could have been raised on appeal from the conviction or sentence. An exception exists when the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief." Mich. Ct. R. 6.508(d)(3)(a) and (b). Petitioner failed to comply with this rule by raising claims VII and VIII in the Michigan Court of Appeals on direct review.

Second, the state courts enforced the rule. The trial court, the Michigan Court of Appeals, and the Michigan Supreme Court relied on Rule 6.508(D) to deny relief when Petitioner raised claims 7 and 8 on collateral review of his convictions. The state courts' reliance on Rule 6.508(D) is a sufficient basis for this Court to conclude that the orders were based on a state procedural bar. *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002).

When deciding whether the third element of procedural default (adequate and independent basis) is satisfied, courts ask "whether the state rule in question was firmly established and regularly followed." *Beard v. Kindler*, __ S.Ct. __, __, No. 08-992, 2009 WL 4573277, at *5 (U.S. Dec. 8, 2009) (quotation marks and citation omitted). Rule 6.508(D) was enacted in 1989 and was "firmly established and regularly followed" before Petitioner appealed his convictions. And "[i]t is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan courts may rely in foreclosing review of federal claims." *Akrawi v. Booker*, 572 F.3d 252, 261 (6th Cir. 2009) (citing *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005)).

16

To summarize, all three elements of a procedural default are present in this case. Petitioner therefore must show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### b. Cause for Not Raising the Claim about Trial Counsel's Advice Concerning the Prosecutor's Plea Offer

Petitioner has not advanced any argument in support of a finding of "cause and prejudice" for his failure to argue in his appeal of right that his trial attorney refused to allow him to plead guilty. The Court therefore deems the "cause and prejudice" argument abandoned as to that claim. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003).

The "cause and prejudice" requirement may be overlooked "[i]f a petitioner presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he Schlup standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not presented any new evidence in support of a claim of actual

17

innocence.  Furthermore, there is no support in the record for Petitioner's contention that the prosecution offered him a sentence of eleven years in prison in return for pleading guilty to murder.  Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the merits of Petitioner's claim that his trial attorney advised him to go to trial and to reject a plea offer.  That claim is procedurally defaulted.

### c.  Cause for Failing to Raise a Claim about Trial Counsel's Failure to Assert a Defense of Guilty, but Mentally Ill

Petitioner's remaining claim about his attorneys alleges that trial and appellate counsel should have asserted a defense of guilty, but mentally ill.  Although Petitioner has not alleged "cause and prejudice" in connection with this claim, the Court liberally construes the allegation about Petitioner's appellate attorney to allege that appellate counsel was "cause" for Petitioner's failure to assert on direct review a claim about trial counsel's failure to assert a defense of guilty, but mentally ill.

Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default."  *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)).  To provide effective assistance, an appellate attorney need not raise every nonfrivolous argument urged by the appellant if the attorney decides, as a matter of professional judgment, not to raise those arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The "process of 'winnowing out weaker arguments on appeal and focusing on' those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at

18

751-52).

Furthermore, "it is difficult to demonstrate that an appellate attorney has violated the performance prong [of the *Strickland* test] where the attorney presents one argument on appeal rather than another.  In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'"  *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Robbins*, 528 U.S. at 288)).  "Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."  *Howard,* 405 F.3d at 485 (citing *Greer v. Michell*, 264 F.3d 663 (6th Cir. 2001)).

Petitioner's trial attorney may have chosen not to raise a defense of guilty, but mentally ill, because the defense requires an admission of guilt.   Petitioner did not believe he was guilty.  (Tr. May 17, 2000, at 116-17.)  At his sentencing, he stated that the shooting was an accident (Tr. Aug. 5, 2003, at 6), and in this Court, he alleges that he is actually innocent of premeditated murder.

Moreover, in Michigan a finding that the defendant is guilty, but was mentally ill at the time of the offense, does not exculpate or reduce the degree of an offense and is not supposed to affect sentencing.  *People v. Ramsey*, 375 N.W.2d 297, 313, 315 (Mich. 1985) (Levin, J., dissenting).  "A defendant found guilty but mentally ill is required to be and is in fact processed and dealt with essentially in the same manner as any other convicted person."  *Id.* at 315.  Thus, it was not unreasonable for defense counsel to attempt to obtain an acquittal or a conviction on a lesser-included offense, as opposed to asserting a defense that Petitioner was guilty of murder, but mentally ill.

The Court concludes that trial counsel was not ineffective for failing to assert a

19

defense of guilty, but mentally ill.  Petitioner's claim about trial counsel is not clearly stronger than the claims raised on direct appeal.  Therefore, appellate counsel was not ineffective for failing to raise the issue on direct review and was not "cause" for Petitioner's procedural default.  *See Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004).

The Court need not determine whether Petitioner was prejudiced by his attorney's alleged ineffectiveness, because he has failed to show "cause" for his procedural default. *Willis*, 351 F.3d at 746 (citing *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)).  The narrow exception for fundamental miscarriages of justice does not apply because Petitioner has not demonstrated that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496.  Petitioner's claim about the failure to raise a defense of guilty, but mentally ill, is procedurally defaulted.

### D.  Sentencing

The fifth habeas claim alleges that Petitioner was denied his right to meaningful allocution at his re-sentencing due to his lack of mental competence.  This claim is not cognizable on habeas review because "'[t]here is no constitutional right to allocution under the United States Constitution,'" *Cooey v. Coyle*, 289 F.3d 882, 912 (6th Cir. 2002) (quoting *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)), and a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991).  Even if the claim were cognizable, the sentence for first-degree murder is mandatory life imprisonment.  Mich. Comp. Laws § 750.316(1).  Consequently, allocution would not have benefitted Petitioner and the alleged

20

constitutional error was harmless.

### E. Actual Innocence

The sixth habeas claim alleges that Petitioner is actually innocent of premeditated murder. "[A] claim of 'actual innocence' is not itself a constitutional claim . . . ," *Herrera*, 506 U.S. at 404, and the Supreme Court has "described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'" *House*, 547 U.S. at 555 (quoting *Herrera*, 506 U.S. at 417). A habeas petitioner must show that, more likely than not, no reasonable juror would have convicted him in light of new evidence. *Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005) (citing *Schlup*, 513 U.S. at 327). Stated differently, the petitioner must show that, "in light of . . . new evidence . . . , more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

Petitioner has not presented the Court with any new and reliable evidence in support of a claim of actual innocence. Thus, this case is not one of the rare and extraordinary cases in which a claim of actual innocence warrants a new trial.

### IV. Conclusion

The state courts' conclusions in this case did not result in decisions that were contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

### V. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner

must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "[A] claim can be debatable even though

every jurist of reason might agree, after the [certificate of appealability] has been granted

and the case has received full consideration, that [the] petitioner will not prevail."  *Miller-El*,

537 U.S. at 338.

Reasonable jurists could disagree with the Court's resolution of Petitioner's first and

ninth claims concerning his first-degree murder conviction.  The trial court, after all, vacated

the conviction and found Petitioner guilty of second-degree murder.   A certificate of

appealability, therefore, may issue on claims 1 and 9.

Reasonable jurists also could find the Court's resolution of Petitioner's fourth claim

(failure to assert an insanity defense) debatable.  Accordingly, a certificate of appealability

may issue on claim 4.  At a minimum, claims 1, 4, and 9 deserve encouragement to

proceed further.

Reasonable jurists would not disagree with the Court's resolution of claim 2

(prosecutorial misconduct and defense counsel's failure to object), claim 3 (insufficient

evidence of second-degree murder), claim 5 (denial of allocution), or claim 6 (actual innocence).  Nor would reasonable jurists disagree with the Court's ruling on claims 7 and 8 regarding the failure to assert a defense of guilty, but mentally ill, and defense counsel's advice regarding an alleged plea offer.  Claims 7 and 8 are procedurally defaulted, and reasonable jurists would not find it debatable whether the issues state a valid claim of the denial of a constitutional right and whether the Court's procedural ruling is correct.  Thus, a certificate of appealability will not issue on claims 2, 3, 5, 6, 7, or 8.  Petitioner may proceed *in forma pauperis* on appeal without further authorization because he was permitted to proceed *in forma pauperis* in the District Court.  Fed. R. App. P. 24(a)(3).


s/Nancy G. Edmunds                                
Nancy G. Edmunds
United States District Judge

Dated:  December 15, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 15, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                               
Case Manager

23